**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **LOCATION SERVICES IP, LLC,** | |
| **Plaintiff,** | **Civil Action No. 2:16-cv-01176-JRG** |
| **v.** | **LEAD CASE** |
| **7-ELEVEN, INC.,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |
| **DUNKIN' BRANDS, INC. D/B/A DUNKIN' DONUTS D/B/A BASKIN ROBBINS ET AL.,** | **Civil Action No. 2:16-cv-01178-JRG** |
| **Defendants.** | |

**DEFENDANTS' RULE 12 MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

# **TABLE OF CONTENTS**

I.      Introduction ........................................................................................................... 1

II.     Nature and Stage of the Proceedings ................................................................... 2

III.    Overview of the Asserted Patents ........................................................................ 2

        A.      The '834 Patent ......................................................................................... 5

        B.      The '023 Patent ......................................................................................... 6

        C.      The '220 Patent ......................................................................................... 6

IV.     Legal Standard ..................................................................................................... 7

V.      The Alice Framework for Patent-Eligible Subject Matter .................................. 9

VI.     The Asserted Claims Are Not Patent-Eligible under 35 U.S.C. § 101 ........... 11

        A.      The '834 Patent ....................................................................................... 11

        B.      The '023 Patent ....................................................................................... 15

        C.      The '220 Patent ....................................................................................... 19

VII.    Recent Federal Circuit Law Supports the Patent-Ineligibility of the Asserted Claims .. 22

VIII.   Conclusion ......................................................................................................... 25

        CERTIFICATE OF SERVICE ........................................................................... 27

## TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Alice Corp. v. CLS Bank Int'l,*
   134 S. Ct. 2347 (2014) ...................................................................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*
   841 F.3d 1288 (Fed. Cir. Nov. 1, 2016) ..............................................................23, 24, 25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................................7

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.),*
   687 F.3d 1266 (Fed. Cir. 2012) ...........................................................................................10

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC,*
   827 F.3d 1341 (Fed. Cir. 2016) ...........................................................................................24

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.,*
   681 F.3d 1323 (Fed. Cir. 2012) .............................................................................................7

*Bilski v. Kappos,*
   130 S. Ct. 3218 (2010) .......................................................................................................9, 11

*buySAFE, Inc. v. Google, Inc.,*
   765 F.3d 1350 (Fed. Cir. 2014) ....................................................................................1, 8, 14

*Callwave Commc'ns, LLC v. AT&T Mobility, LLC,*
   No. 12-1701, 2016 WL 4941990 (D. Del. Sept. 15, 2016).............................................*passim*

*Clear with Computers, LLC v. Altec Indus., Inc.,*
   No. 6:14-cv-79, 2015 WL 993392 (E.D. Tex. Mar. 3, 2015) ...............................................8

*Concaten, Inc. v. Ameritrak Fleet Solutions, LLC,*
   131 F. Supp. 3d 1166, 1170 (D. Colo. 2015)..............................................................13, 17, 20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.,*
   776 F.3d 13437 (Fed. Cir. 2014) ....................................................................................1, 4, 9, 21

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.,*
   558 F. App'x 988 (Fed. Cir. 2014) ...................................................................................8, 9

*CyberSource Corp. v. Retail Decisions, Inc.,*
   654 F.3d 1366 (Fed. Cir. 2011) ........................................................................................9, 11

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014) ......................................................................................18, 24

*Dealertrack, Inc. v. Huber,*
   674 F.3d 1315 (Fed. Cir. 2012) ............................................................................................9

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) .................................................................................. 9, 13, 22

*E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
  No. 12-CV-517-LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015) ........................................ 10

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) .................................................................................... 10, 23

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ...................................................................................*passim*

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
  No. 13-cv-3777 (AKH), 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ............................ 11

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed. Cir. 2015) .............................................................................. 7, 10, 11

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
  107 F. Supp. 3d 677, 681 (E.D. Tex. 2015) ............................................................... 15, 18

*Landmark Tech., LLC v. Assurant, Inc.*,
  No. 6:15-cv-76, 2015 WL 4388311 (E.D. Tex. July 14, 2015) ...................................... 2, 17

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
  66 F. Supp. 3d 829, 840–42 (E.D. Tex. 2014) .................................................................. 1

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ................................................................................................. 11, 21

*McRO, Inc. v. Bandai Namco Games Am., Inc.*,
  837 F.3d 1299 (Fed. Cir. 2016) ........................................................................................ 23

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ..................................................................................... 1, 8

*Orostream LLC v. ABS-CBN Int'l*,
  No. 2:15-cv-248, 2015 WL 5836949 (E.D. Tex. Oct. 1, 2015) ........................................ 18

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*,
  No. 6:15-cv-682 (E.D. Tex. Jan. 4, 2016), Dkt. No. 93 ........................................... 8, 17, 21

*In re TLI Commc'ns Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ......................................................................................... 10

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) ....................................................................................... 8, 13

*Voxathon LLC v. Alpine Elecs. of Am., Inc.*,
  No. 2:15-cv-562-JRG, 2016 WL 260350 (E.D. Tex. Jan. 20, 2016) ............................... 11

*Wireless Media Innovations LLC v. Maher Terminals, LLC*,
  100 F. Supp. 3d 405, 408–09 (D.N.J. 2015) ........................................................... 13, 17, 20

**Statutes**

35 U.S.C. § 101 ......................................................................................................................*passim*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Dunkin' Brands, Inc., Dunkin' Donuts LLC, Dunkin' Donuts Franchising LLC, DD IP Holder LLC, Baskin-Robbins LLC, Baskin-Robbins Franchising LLC, and BR IP Holder LLC (collectively, "Defendants") move to dismiss the Complaint filed by Plaintiff Location Services IP, LLC ("LSIP") because the claims of each of the asserted patents are invalid under 35 U.S.C. § 101 for claiming abstract ideas that are not eligible for patent protection.

## I.      Introduction

The Federal Circuit, in applying the Supreme Court's directive in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), has consistently held that claims reciting well-known generic computer elements—such as requesting, receiving, transmitting, or storing data—are ineligible subject matter. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc*., 788 F.3d 1359, 1360 (Fed. Cir. 2015); *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350, 1352 (Fed. Cir. 2014); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1346–47 (Fed. Cir. 2014). As in those cases, the patents asserted against Defendants similarly fail the now familiar, two-part *Alice* inquiry. The claims cover no more than the abstract concept of providing users with information regarding the locations of businesses or other entities in response to a search. As acknowledged within the four corners of the asserted patents, such information has long been available in telephone books like the Yellow Pages. Taking a well-established and long available physical medium—a book—and making it available through the search functionality of a mobile apparatus "via the Internet" altogether lacks an "inventive concept."

This Court has recognized the shortcomings of patents that do not improve the functioning of a computer itself and instead claim generic computer components that add speed and convenience through basic functions such as searching for, storing, or displaying information. *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 840–42 (E.D. Tex. 2014).

Like other cases where the claims do no more than "require a generic computer to perform generic functions," the patent claims here are "dressed up in the argot of invention" while reciting generic computer components to carry out well-known and long-used abstract ideas. *Id*. at 845 (citing *Alice*, 134 S. Ct. at 2359; *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005 (Fed. Cir. 2014)). Once the winding claims of the asserted patents are reduced into plain prose, there is nothing left but an ineligible abstract idea.

## II.     Nature and Stage of the Proceedings

LSIP began asserting U.S. Patent Nos. 6,356,834 ("the '834 Patent"), 6,202,023 ("the '023 Patent"), and 6,935,220 ("the '220 Patent") on October 19, 2016. LSIP has brought a wave of lawsuits against dozens of defendant groups. Defendants were sued in the most recent round of Complaints on October 19, 2016.

In filing this Motion, Defendants seek an adjudication on the merits at the pleading stage. "When patent claims on their face are plainly directed to an abstract idea, it is proper to determine patent validity under § 101 at the pleading stage, and such conduct has been repeatedly sanctioned by the Federal Circuit." *Landmark Tech., LLC v. Assurant, Inc*., No. 6:15-cv-76, 2015 WL 4388311, at *2 (E.D. Tex. July 14, 2015) (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1343 (Fed. Cir. 2015); *OIP Techs.*, 788 F.3d at 1360; *Content Extraction*, 776 F.3d at 1349; *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014); *buySAFE*, 765 F.3d at 1352)).

## III.     Overview of the Asserted Patents

The three asserted patents are titled "Geographic Location Referencing System and Method" (the '834 Patent), "Internet Based Geographic Location Referencing System and Method" (the '023 Patent), and "Unified Geographic Database and Method of Creating,

Maintaining, and Using the Same" (the '220 Patent). According to LSIP, all three patents are continuations of an earlier application that issued as U.S. Patent No. 5,839,088 ("Geographic Location Referencing System and Method"). (*See* No. 2:16-cv-01176, Dkt. No. 1 ("Complaint") at ¶¶ 22–23, 64–65, 130, 180, 188, 196.) The three patents are generally in the field of providing information regarding the locations of businesses or other entities over a computer network such as the Internet. For example, in its Complaint alleging infringement, LSIP characterizes each of the asserted patents as providing a user with locational or geographic information over some kind of "network" such as the Internet:

- The '834 Patent is described as "a method of disseminating location information from a central repository via the internet to assist users of locational systems in navigation." (*See id.* at ¶ 197.)

- The '023 Patent is described as "a method for automatically providing informational services based on a geographical location of a client computer system." (*See id.* at ¶ 181.)

- The '220 Patent is described as "a method for providing informational services via a communications network." (*See id.* at ¶ 189.)

Common to all three patents are claims that are generally directed to searching for and providing users with "locational information." While some of the claims make no reference to hardware, software, or other computer components, other claims imply the presence of a computer with conventional networking tasks such as user searching, querying a database to return results based on geography, and providing a user with locational information that will assist with navigation.

Notably, neither LSIP nor the applicants contend that the applicants invented any of these routine computer activities. The patents do not indicate that the applicants were the first to combine use of a computer with delivery of locational information. Instead, review of the claims in the asserted patents compels a singular conclusion: nothing in the claims purports to improve the functioning of a computer; the computer-related elements of the claim are conventional activities.

By way of example, figures common to all three patents parrot back boilerplate steps relating to the movement of data through any computer network. Figures 4 and 5 of each asserted patent (reproduced below) illustrate the trivial nature of the disclosed structures.



*Fig. 4*

*Fig. 5*

Indeed, the asserted patents reference a "navigation unit," an "input device," an "output device," a "processor," and "storage," but nowhere is there detail as to how to uniquely implement such components in any way that would improve the functioning of the devices themselves.

The details of the claims will be explored as part of the § 101 analysis presented below, but a common theme throughout the claims is that the claimed tasks rely on generic computer activities or, in some instances, steps that that have been performed by humans for centuries. Because the claims are drawn to interrelated abstract concepts with variations of using conventional computer components, the claims of all three patents should rise or fall together for purposes of the patent-eligibility analysis. *See Content Extraction*, 776 F.3d at 1348 (affirming a district court's determination that it need not address every claim subject to a section 101 patent-

eligibility analysis when the claims are "substantially similar and linked to the same abstract idea").

### A.    The '834 Patent

In its Complaint, LSIP highlights the following steps as being exemplary of the claims of the '834 Patent: (1) providing a central repository with stored information for at least one geographic region [description of the stored information as being associated with geographic locations based on latitude and longitude coordinates]; and (2) disseminating location information for a proprietary name from the central repository to a user via the internet to use in association with said locational system to assist in navigation. (*See* Complaint at ¶ 197.) Although broken out into 65 separate claims with 30 independent claims and 35 dependent claims, the functionality of each claim is the same: to deliver geographical or locational information over a network, with the information often being linked to a "proprietary name" for a business or other entity.

Figure 12b, which is common to all the asserted patents, illustrates this fundamental concept for a claim (like claim 37) that is premised on latitude or longitude coordinates. The information the user seeks is stored in a central repository, such as a database. Figure 12b shows that a user can search, through an unspecified device, for the location of a specific restaurant chain in Newport Beach, California, by entering a proprietary name such as "MAC1," in the search box on the screen. When the proprietary name is input into the system, the system determines the output corresponding to latitude and longitude coordinates. '834 Patent at 14:41–43. In Figure 12b, the proprietary location address "CA.NWB.MAC1" refers to a restaurant location in Newport Beach, California—the city nearest to the user's location. Thereafter, the location information associated with the proprietary name is transmitted to the client device. Thus, the user's successful search for a location associated with a proprietary name depends on the user knowing and identifying a specific registered name or term, such as that of a restaurant chain.

### B. The '023 Patent

The '023 patent automatically provides users in a mobile environment with informational services based on a geographical location of a client computer system. (*See* Complaint at ¶ 181.) The information provided is "specific to the user's geographic environment." '023 Patent at 2:62–67. The information is also provided in a way intended to "reduce[] user input requirements," *id*. at 1:35–38, or minimize the "amount of reading, scrolling, and searching, and with a limited number of keystrokes for data entry." *Id.* at 2:48–51.

### C. The '220 Patent

The '220 Patent generally covers "a method for providing informational services via a communications network" through a variety of steps involving a database query. (*See* Complaint at ¶ 189.) The 48 claims recite methods, systems, and a "navigational apparatus." Common to all claims, however, is the concept of searching via a "portable navigational apparatus." The "portable navigational apparatus" sends a search query that includes both a proprietary search term and information identifying a current location of the apparatus. After accessing a unified geographic database, search results are delivered back to the navigational apparatus over a computer network.

The '220 Patent introduces a database—the "Universal Geographic Database" or "UGD"—as the storage device for location information associated with proprietary search terms. *See* '220 Patent, Figs. 27, 28. The '220 Patent teaches that a UGD is analogous to a registry of domain names for Internet and web sites. More specifically, the '220 Patent specification teaches that each UGD record includes a unique address on the World Geographic Referencing System (WGRS) that, once converted into latitude and longitude coordinates, provides users with locational information about real-world businesses. *See id.* at 2:41–67, 3:16–34.

In the specification, the patentee compares the UGD and the disclosures in the '220 Patent to that of the Yellow Pages—a physical book that contains real-world location information for

businesses and other public and private entities. *E.g.,* '220 Patent at 1:56–57. The Background section in the specification identifies perceived problems with the physical Yellow Pages, namely that "Yellow-Page books are typically printed annually, and thus, provide an incredibly inefficient method of address and location handling that ***ultimately takes little advantage of the power of the Internet***." *Id.* at 2:15–18 (emphasis added). The aim of the invention in the '220 Patent, therefore, is to harness the power of the Internet by claiming the search of a UGD, an online registry where "businesses and other entities can immediately post their location-related information to make it available to potential users; and can simultaneously query this registry to obtain accurate, complete and timely location-based information about these businesses and other entities, via Internet-connected electronic devices or services." *Id.* at 2:36–41.

## IV.    Legal Standard

A complaint attacked by a Rule 12(b)(6) motion to dismiss must allege "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face'" to show the plaintiff is plausibly entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1332 (Fed. Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679).

When patent claims on their faces are plainly directed to an abstract idea, it is proper to make a determination of patent validity under § 101 at the pleading stage without necessity of claim construction. *See, e.g., Internet Patents Corp. v. Active Network, Inc*., 790 F.3d 1343, 1348–49 (Fed. Cir. 2015) (affirming dismissal under § 101 where claims were directed to the abstract

idea of "retaining information in the navigation of online forms"); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359 (Fed. Cir. 2015) (affirming dismissal under § 101 where claims were directed to the abstract idea of offer-based price optimization involving "fundamental economic concepts" and merely "requiring conventional computer activities or routine data-gathering steps"); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991 n.1 (Fed. Cir. 2014) ("There is no requirement that the district court engage in claim construction before deciding § 101 eligibility."); *Clear with Computers, LLC v. Altec Indus., Inc.*, No. 6:14-cv-79, 2015 WL 993392, at *3 (E.D. Tex. Mar. 3, 2015) (rejecting argument that motion to dismiss under § 101 was premature prior to claim construction for patent involving "relatively simple" terms).

Where, as here, the asserted patents are directed to abstract ideas implemented with conventional technology, courts routinely invalidate patents at the pleading stage that fail to add limitations that would transform the abstract idea into patent-eligible subject matter. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714–17 (Fed. Cir. 2014) (Mayer, J., concurring) (holding that claims directed to the abstract idea of showing an advertisement before delivering free content was not transformed into patent-eligible subject matter by invoking use of the Internet); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1353–55 (Fed. Cir. 2014) (holding that claims directed to the abstract idea of creating a contractual relationship, *i.e.*, a transaction performance guaranty, which is of "ancient lineage," using generic computer network functions is "not even arguably inventive"); Report & Recommendation at 8, 11, *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-cv-682 (E.D. Tex. Jan. 4, 2016), Dkt. No. 93 (invalidating asserted claims at the pleading stage to "avoid unnecessary delay" because, *inter alia*, the claimed solutions "simply relate to ease, accuracy, and efficiency benefits achieved when any fundamental or well-known concept is implemented on a computer device").

## V.      The Alice Framework for Patent-Eligible Subject Matter

Whether a claim recites patent-eligible subject matter is a question of law. *Dealertrack,*

*Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012); *CyberSource Corp. v. Retail Decisions, Inc.*,

654 F.3d 1366, 1367–69 (Fed. Cir. 2011). Section 101 of the Patent Act defines the four categories

of inventions or discoveries that are eligible for patent protection:

> Whoever invents or discovers any new and useful process, machine, manufacture,
> or composition of matter, or any new and useful improvement thereof, may obtain
> a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101. The Supreme Court has recognized three specific exceptions to the otherwise

broad domain of patent-eligible subject matter: "laws of nature, physical phenomena, and abstract

ideas." *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010). Abstract ideas are ineligible for patent

protection because "they are the basic tools of scientific and technological work." *Id.* at 3231

(quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). A monopoly over such ideas would

improperly preempt use of such ideas in all fields. *Id.*

More recently, the Supreme Court adopted a two-step test for patent-eligibility. At step

one, a court determines whether the claims at issue are directed to a patent-ineligible concept such

as an abstract idea. *Alice*, 134 S. Ct. at 2355. Recognized categories of abstract ideas relevant here

include, among others, "method[s] of organizing human activity," "data collection, recognition,

and storage," "using categories to organize, store, and transmit information," and "process[es] of

organizing information." *Id.* at 2356–57; *Content Extraction*, 776 F.3d at 1347; *Cyberfone*, 558 F.

App'x at 992; *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed.

Cir. 2014).

Once an abstract idea has been identified, the second step searches for "an 'inventive

concept'—*i.e.*, an element of combination of elements that is 'sufficient to ensure that the patent

in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*,

134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Thus, a court "consider[s] the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id*. The application of "well-understood, routine, conventional activities previously known" is insufficient to find an inventive concept. *Internet Patents*, 790 F.3d at 1348 (citing *Mayo*, 132 S. Ct. at 1298); *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368 (Fed. Cir. 2015) (hereinafter, "*Capitol One*") ("Instructing one to 'apply' an abstract idea and reciting no more than generic computer tasks does not make an abstract idea patent-eligible.").

In the context of computer-related technology, the Federal Circuit has recently provided additional guidance. Specifically, a claim must be directed to a specific "improvement in computer capabilities" rather than "an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016); *see also In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016) (affirming grant of § 101 motion to dismiss where "the claims here are not directed to a specific improvement to computer functionality"). Merely implementing an abstract idea via a general-purpose computer does not render a claim eligible for patenting. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012); *see also E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-CV-517-LM, 2015 WL 226084, at *9 (D.N.H. Jan. 15, 2015) ("[The] claim only says what the invention does. Without a disclosure of how the invention does what it does … [r]ather, the patent merely recites the use of a generic computer to perform generic computer operations, and that is not enough to establish an inventive concept.").

Indeed, the Federal Circuit emphasizes that it has "never suggested that simply reciting the use of a computer to execute an algorithm that can be performed entirely in the human mind" confers patent eligibility. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011). To argue otherwise would be a fool's errand because, as one court articulated, "[a]ll software patents, whether drawn to an abstract idea or not, require implementation by way of a computer program. [Patentee's] argument would result in the validation of all software patents, whether drawn to an abstract idea or not. This it cannot do." *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777 (AKH), 2015 WL 1941331, at *12 (S.D.N.Y. Apr. 28, 2015). Moreover, "[t]he inclusion of a generic computer to automate activity or behavior that has long existed does not suffice to meaningfully restrict [a patent] from preempting [an] abstract idea." *Voxathon LLC v. Alpine Elecs. of Am., Inc.*, No. 2:15-cv-562-JRG, 2016 WL 260350, at *4 (E.D. Tex. Jan. 20, 2016).

## VI.     The Asserted Claims Are Not Patent-Eligible under 35 U.S.C. § 101

Applying the guidance of *Bilski*, *Mayo*, and *Alice* begins by "ascertaining the basic character of the subject matter." *Internet Patents*, 790 F.3d at 1348. For purposes of conducting the § 101 analysis, the subject matter of the asserted claims of the '834 Patent relate to the abstract idea of "providing a central repository with stored information" and then "disseminating location information" to a user. Furthermore, the claims lack any transformative "inventive concept" that would impose meaningful limitations.

### A.     The '834 Patent

The asserted claims of the '834 Patent (claims 37, 55, 56, and 57) are directed to patent-ineligible subject matter according to both steps of the *Alice* analysis and are therefore invalid.

**Step 1:**

Claims 37, 55, 56, and 57 of the '834 Patent generally require the provision of a central repository from which location information is disseminated to users. In these claims, searching the central repository is implied, but no specific requirements are given for the search. Dissemination of information to users occurs "via the internet."

Each of the claims contains the "providing" and "disseminating" steps LSIP highlighted in its Complaint. For example, claim 37 recites:

> 37.    A method of disseminating location information from a central repository via the internet to assist users of locational systems in navigation, comprising:
>
> providing a central repository with stored information for at least one geographic region, the stored information including positional information for geographic locations associated with respective proprietary names, wherein the positional information includes geodetic latitude and longitude coordinates;
>
> disseminating location information for a proprietary name from the central repository to a user via the internet to use in association with same locational system to assist in navigation.

Because the "dissemination" clause is identical among claims 37, 55, 56, and 57, the only claimed variable is the type and/or organization of information stored in the central repository. In claim 55, for example, the stored positional information corresponds to "a company's name and a unique identifier of the company," while in claim 56 the stored positional information corresponds to "an individual person's name." In claim 57, the stored information is organized according to "a hierarchical address." Yet, regardless of the means by which locational information is provided to a user from a central repository, claims 37, 55, 56, and 57 each cover the fundamental concept of a user searching by proprietary name for location information stored in a database.

The concept of searching for location information based on what the specification calls a "trade name" is decidedly abstract. '834 Patent at 5:6–9 (using a nation-wide enterprise such as

Exxon "as an example of a tradename that would allow a user to identify the location of an establishment in a particular geographic area"). Whatever the ordered combination of steps, the providing of proprietary name information to a central repository and the dissemination of locational information to a user is an idea with no particular concrete or tangible form. *See Ultramercial*, 772 F.3d at 715. Like the claims in *Digitech*, there is no reference in the claims to "hardware or software" and no tangible embodiment of the information that is disseminated. *Digitech*, 758 F.3d at 1349–50. And without such a tangible embodiment, the claims fall squarely into the category of an abstract idea. *Id.* at 1350 ("Data in its ethereal non-physical form is simply information that does not fall under any of the categories of eligible subject matter under section 101.").

Indeed, several district courts have held that similar claims addressing storing and disseminating location information were directed to abstract ideas.

In *Concaten*, the claims at issue were directed toward a method of communicating the location of snow vehicles to a server over a wireless network, processing the information to provide both a map displaying such location and an instruction for the vehicle operator, and sending the map and instruction over the wireless network back to the vehicles. *See Concaten, Inc. v. Ameritrak Fleet Solutions, LLC*, 131 F. Supp. 3d 1166, 1170 (D. Colo. 2015); *see also Callwave Commc'ns, LLC v. AT&T Mobility, LLC*, No. 12-1701, 2016 WL 4941990, at *4 (D. Del. Sept. 15, 2016). The court held that these claims were drawn to the abstract idea of receiving, processing, and transmitting (or disseminating) data. *Concaten*, 131 F. Supp. 3d at 1174.

Additionally, in *Wireless Media*, the claims were directed to systems and methods for monitoring and recording container location and load status at a container-receiving facility. *Wireless Media Innovations LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 408–09 (D.N.J.

2015). The court in that case found that the claims were "directed to the same abstract idea: monitoring locations, movement, and load status of shipping containers within a container receiving yard, and ***storing***, reporting and ***communicating*** [or disseminating] this information in various forms through generic computer functions." *Id.* at 413 (emphasis added).

Finally, in *Callwave Communications*, the claims were directed to a basic series of communications for determining the location of "mobile platforms." 2016 WL 4941990, at *1, *4. The court found that the concept underlying the claims of relaying (or disseminating) location information, specifically through an intermediary, was an abstract idea. *Id.* at *4. The court further explicitly stated that "[r]equesting and receiving location information is an abstract idea." *Id.*

**Step 2:**

Turning to the second part of the test described in *Alice*, there are no "additional elements" in claims 37, 55, 56, and 57 of the '834 Patent that "transform the nature of the claim into a patent-eligible application." *Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. at 1297). The only distinct reference to modern computer technology in any of these claims is the requirement that location information is disseminated from the central repository "via the internet." But this bare reference to the Internet falls far short of being transformative. In *buySAFE*, the Federal Circuit explained, "That a computer receives and sends the information over a network—with no further specification—is not even arguably inventive." 765 F.3d at 1355. Thereafter, in *Capitol One*, 792 F.3d 1363, 1367 (Fed. Cir. 2015), the Federal Circuit again encountered claims that recited using a "communication medium (broadly including the Internet and telephone networks)" and again confirmed that "incidental use of a computer to perform the claimed process does not impose a sufficiently meaningful limitation on the claim's scope." *Id.* at 1368 (quoting *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1375 (Fed. Cir. 2011)). In short, the reference to the Internet is not transformative.

The incorporation of a "central repository" is equally unavailing in the inventive concept analysis. As a threshold matter, the use of central repository is so broad that it does not limit the term to some kind of database. It is plausible to imagine a phone book qualifying as a "central repository" along the same lines it is discussed in the '220 Patent. '220 Patent at 1:56–58 (noting that the "largest single source of location-based information regarding businesses is that of Yellow Page publishers" and acknowledging that "Yellow Page publishers" can be either "physical books or the Internet"). Yet, even assuming for purposes of argument that the claimed "central repository" was analogous to a database, this type of generic data reservoir would not amount to an inventive concept. To the contrary, a claimed database was considered by the Federal Circuit in *Capitol One*, and squarely rejected under the second step of the *Alice* framework. 792 F.3d at 1368 ("The recited elements, e.g., a database, a user profile [quoted claim language], and a communication medium, are all generic computer elements."); *see also Kroy IP Holdings, LLC v. Safeway, Inc.*, 107 F. Supp. 3d 677, 681 (E.D. Tex. 2015) (finding an invention ineligible that "envisions the creation of databases of items that permit automated fulfillment of specific items as rewards").

Even accepting a reading of the claims most favorable to LSIP, there are only generic computer and Internet based elements that have no specific application beyond "providing a central repository with stored information" and "disseminating location information for a proprietary name from the central repository to a user." Accordingly, there is no transformative element in claims 37, 55, 56, or 57 that turns an abstract idea into patent-eligible subject matter under 35 U.S.C. § 101.

## B.    The '023 Patent

The asserted claim of the '023 Patent (claim 2) is directed to patent-ineligible subject matter according to both steps of the *Alice* analysis and is therefore invalid.

**Step 1:**

The method claims of the '023 Patent disclose a combination of steps that are all directed to the same concept of "providing informational services based on a geographical location of a client computer system." Each of the method claims of the '023 Patent relates to searching in a mobile environment, purporting to "reduce user input requirements" through automation. *See* '023 Patent at 1:35–38. Specifically, claim 2 of the '023 Patent provides:

2.      A method for automatically providing informational services based on a geographical location of a client computer system, wherein said informational services are provided by a server attached to a computer network, said method comprising the steps of:

executing an application program on said client computer system for collecting user data and location information representative of the geographical location of the client computer system, said application program including a user interface module, a web browser module, a data packet module and an ALI polling module, said user interface module comprises the steps of:

location prompting for accepting parameters for defining a particular location, wherein location prompting includes the step of prompting the user to specify whether said location information is based on a current or projected location; and

user preference prompting for accepting one or more user preferences;

constructing a data packet comprising said user data and location information;

connecting to the server;

transmitting said data packet to the server;

parsing said data packet to extract said user data and location information;

formulating a database query from said user data and location information;

issuing a database query on a database coupled to the server; and

downloading a result from said database query relating to the geographical location of the client computer system to said client.

Automatic searching in the method claims is achieved through the execution of an application program for collecting user data and location information on the client computer. The "application program" is consistently executed with four modules: 1) a user interface module; 2) a web browser module; 3) a data packet module; and 4) an ALI polling module.

Claim 2 of the '023 Patent is abstract because it fails to solve a computer or Internet-specific problem. Instead, the claim recites generic limitations to broadly cover the concept of searching with reduced user input requirements so as to minimize reading, scrolling, and searching, and with a limited number of keystrokes for data entry." '023 Patent at 2:48–51. In *Landmark Technology*, this Court specifically held that "searching for and retrieving information on a computer system" is an abstract idea. *Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-cv-76, 2015 WL 4388311, at \*5 (E.D. Tex. July 14, 2015). There is no reason to depart from that conclusion here based on a claim drawn to a form of searching for locational information that purportedly increases user efficiencies. It is well-established that computer limitations—such as the "modules" in the claimed "application program"—that merely add speed or efficiency of the process do not transform an otherwise abstract idea. *See Capitol One*, 792 F.3d at 1370; *Rothschild* at 11 (finding that "all of the solutions here simply relate to ease, accuracy, and efficiency benefits achieved when any fundamental or well-known concept is implemented on a computer device"). Accordingly, claim 2 is directed to an abstract idea.

The district court rulings in *Concaten*, *Wireless Media*, and *Callwave Communications* finding claims directed to providing location information abstract are also instructive here. Specifically, the plaintiff in *Callwave Communications* also argued that the asserted claims reduced the need for user intervention by "obviat[ing] the need to install and use a cumbersome vehicle tracking software." As explained above, the court still found that the claims were

directed to an abstract idea.

**Step 2:**

Although the various steps of claim 2 of the '023 Patent are set forth in convoluted computer prose such as "constructing a data packet," "formulating a database query," "connecting to a server," "parsing said data packet," and "downloading a result from said database query relating to the geographical location of the client computer system," these routine activities are not individually significant. The claim lacks an inventive concept because nothing in the patent reveals any novel computing functions.

Courts have distinguished between a situation like the one presented here, where computer-related features in claim 2 are commonplace and not directed to an improvement in computer technology, and a situation like *DDR Holdings* where the asserted claim presents a unique solution "in order to overcome a problem specifically arising in the realm of computer networks." *Orostream LLC v. ABS-CBN Int'l*, No. 2:15-cv-248, 2015 WL 5836949, at *4 (E.D. Tex. Oct. 1, 2015) (contrasting ineligible subject matter to claims that "provide a particular computer-implemented solution to solve a problem unique to computers") (quoting *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)). Moreover, in *Kroy*, where the plaintiff emphasized the "importance of the use of computers in its invention," this Court rejected that argument, clarifying that mere use of computer or a network such as the Internet does not render the claims patent-eligible. 107 F. Supp. 3d at 691–92. Even a cursory review of claim 2 of the '023 Patent confirms that the steps tailored to searching with reduced user input requirements are directly comparable to previous cases where the role of computers has been found unpatentable. *Id.* (citing *Alice*, *Ultramercial*, *Content Extraction*, *buySAFE*, and *Bancorp*).

### C.      The '220 Patent

The asserted claims of the '220 Patent (claims 2,[1] 3, 28, and 34) are directed to patent-ineligible subject matter according to both steps of the *Alice* analysis and are therefore invalid.

**<u>Step 1:</u>**

The '220 Patent claims present the same type of well-known and generic computer terms found in the '834 and '023 Patents. Indeed, locational information is searched for and delivered over a network through routine steps involving "an input device," "a processor," "a communications interface," "an output device," "an ALI device" (like a GPS receiver), "a communications network," and "a wireless network." The "portable navigational apparatus" operated by a user sends a search query that includes both a proprietary search term and information identifying a current location of the apparatus. After accessing a UGD, or registry of domain names, search results are delivered back to the navigational apparatus over a computer network.

Claim 3 is exemplary of the asserted method claims in the '220 Patent:

**3.**      A method for providing informational services via a communications network, the method comprising:

receiving a search query via the communications network from a portable navigational apparatus, the search query comprising a proprietary search term identifying one or more locations of interest within a geographical area and locational information identifying a current location of the navigational apparatus at the time of sending the search query;

accessing a unified geographic database ("UGD") to identify an entity within a district of the geographical area uniquely associated with the proprietary search term;

---

[1] For the purposes of the present motion, Defendants assume that LSIP is asserting claim 2 of the '220 Patent, though it appears to be a typo in the Complaint. Compare Complaint at ¶ 190 ("Defendants have infringed . . . the '220 Patent, including claims 3, 28, and 34") with id. at ¶¶ 191–92 ("Defendants . . . infringe the '220 Patent, including claim 2, 28, and 34"). Claims 28 and 34 also depend from claim 3.

using the locational information included in the search query from the navigational apparatus to complete a search of the UGD for one or more locations associated with the entity satisfying the search query and limited in geographic scope by the locational information; and

sending a search result via the communications network to the navigational apparatus, the search result comprising one or more locations associated with the one or more entities identified by the proprietary search term that have a relationship with the locational information.

For the asserted claims, the location information associated with the "proprietary search term" (as opposed to "proprietary name" as used in the '834 Patent) is transmitted to the client device. And, like the '834 Patent, the user's successful search for a location associated with a proprietary search term depends on the user knowing and identifying a specific registered name or term, such as that of a business.

The claim terms of the '220 Patent significantly overlap with the terms used in the '834 and '023 Patents and constitute an abstract idea for the same reasons. The goal of the claims is, simply, to provide locational informational services. The '220 Patent teaches many routes to provide information identified by a proprietary search term, one of which is the time-tested practice of using the Yellow Pages to look up a local business by name. *See* '220 Patent at 1:44–57, 2:9–18. To achieve the objective of the claims and distribute address and locational information for businesses or other entities, an Internet-connected device is not a pre-requisite. Similarly, database registries are not the lone source of information storage. To the contrary, the idea underlying the claims of the '220 Patent is an abstract one that pre-dates the computer age. The applicant did no more than take an old idea—searching for a local business—and combine it with known computer networking tools.

The district court rulings in *Concaten*, *Wireless Media*, and *Callwave Communications* are again relevant here. As stated above, all of the claims in those cases, which were similarly directed to the provision of locational services, were found invalid for being directed to abstract ideas. Of

particular importance is the set of claims in *Callwave Communications* that the court found to be broadly directed to the abstract idea of requesting and receiving location information through an intermediary, without being tethered to a specific environment or describing an improvement in any sort of technology. 2016 WL 4941990, at *4–5. The claims here are similarly directed to the broad abstract idea of providing locational services without any limitations or technological improvements.

**Step 2:**

Limitations such as a "portable navigational apparatus" and "UGD," or any other reference to a computer network do not move the claims beyond the realm of an abstract idea.

The '220 Patent does not suggest that the patentee invented a "portable navigational apparatus" that would assist a user in navigating to an identified location through improved computer functioning. In *Content Extraction*, the patentee argued that the limitation was transformed into patent-eligible matter because in addition to a computer, the claims required a second machine. 776 F.3d at 1347. The Federal Circuit was not persuaded by this argument, principally because use of the second machine, a scanner, was well-known at the time of filing in the same way a "portable navigational apparatus" would have been well-known by the filing date of June 17, 2005. *Id*. at 1348; *see also Rothschild* at 6 (noting that while assessing patent-eligibility under § 101, courts may draw on judicial experience and common sense at the motion to dismiss stage to assess whether an invention or structural claim elements are conventional, routine, or well-known) (citing *OIP Techs*., 788 F.3d at 1364). Inclusion of a "portable navigational apparatus" does not supply an inventive concept.

The same reasoning applies to a "UGD." A "Universal Geographic Database" is a database that stores geographic records. Claims drawn to a database, even if narrowly tailored, are still reciting subject matter that is "well-understood, routine, and conventional" as discussed in *Mayo*.

*See Capitol One*, 792 F.3d at 1368. Furthermore, even if the UGD was understood to be a particular type of "new" database, such a limitation would still fail to confer eligible subject matter because, as the Federal Circuit has explained, "[d]ata in its ethereal non-physical form is simply information that does not fall under any of the categories of eligible subject matter under section 101." *Digitech*, 758 F.3d at 1350. The claims of the '220 Patent describe use of a proprietary search term to query or search for desired locational information, but ultimately the search and retrieval of stored information is not a novel function. Indeed, the court in *Callwave Communications* similarly found that claims that include a "map database" did not contain a sufficiently inventive concept. 2016 WL 4941990, at *6. Moreover, such activities do not "improve the functioning of the computer itself." *Alice*, 134 S. Ct. at 2359.

The limitations presented in dependent claims 28 and 34 likewise fall short of being transformative. With respect to the navigational apparatus being a wireless device in claim 28, there is simply no suggestion in the '220 Patent specification that this structural element was, on its own, unconventional in 2005. Indeed, wireless technology, whether via a "cellular network," a "computer network," or "low orbit or geosynchronous orbit satellite communications," was known and fully described in the '023 Patent (filing date of February 25, 1999). '023 Patent at 24:14–37, 24:60–37. Furthermore, the use of global coordinates as the locational information in claim 34 was also well-known and fully described in the '834 Patent (filing date of April 20, 2001). *See, e.g.*, '834 Patent at 1:45–58. Accordingly, the additional limitations of claims 28 and 34 cover no more than a generic device and known technology in a known field of use. As the asserted claims of the '220 Patent do not set forth any inventive solutions, they are therefore invalid as abstract ideas.

## VII.    Recent Federal Circuit Law Supports the Patent-Ineligibility of the Asserted Claims

As the Federal Circuit has instructed, it can be helpful in the *Alice* analysis to compare the claims at issue to the claims analyzed in previous cases "in which a similar or parallel descriptive

nature can be seen." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. Nov. 1, 2016).

   With respect to the Federal Circuit's recent jurisprudence with respect to step 1 of the *Alice* test, the claims asserted here are distinguishable from those at issue *Enfish* because the claims of the '834, '023, and '220 Patents offer no "specific improvement to the way computers operate." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Rather, any improvement in the efficiency and speed in the provision of location information, whether through storing information in a repository, eliminating the need for certain user input, or relaying information to a user over the internet, is entirely attributable to the application of the above abstract ideas to a computer context, which the Federal Circuit in *Enfish* deemed to be insufficient to elevate an idea beyond the realm of the abstract. *Id.* at 1338 (holding claims that "simply adding conventional computer components to well-known business practices" were directed to an abstract idea). Moreover, nothing in any of the steps of the '834, '023, or '220 Patents describes any unconventional data structure, as was present in *Enfish*. Rather, the claims call for the execution of "'well-understood, routine, conventional activit[ies]' previously known" in the location information field, such that each claimed step is performed exactly the way it would be expected to. *Alice*, 134 S. Ct. at 2359.

   Furthermore, the Federal Circuit's recent holding in *McRO* does not support patent-eligibility in this case. The claims at issue here, unlike those in *McRO*, do not go "beyond merely 'organizing existing information into a new form.'" *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016). Here, the claims state simply "apply some rule" to location information, rather than claiming the use of a specific set of innovative rules as in *McRO*. The steps of the claims here are merely "well-understood, routine, conventional activit[ies]'

previously known" in the location information field that have previously been held to be abstract. *Alice*, 134 S. Ct. at 2359; *see also Callwave Commc'ns*, 2016 WL 4941990, at *4.

Furthermore, the asserted claims of the '834, '023, and '220 Patents are not patent-eligible in light of the Federal Circuit's recent jurisprudence with respect to step 2 of the *Alice* rubric. First, unlike the claims in *DDR Holdings*, the asserted claims do not "require an arguably inventive device or technique for displaying information," nor do they address a technological problem "particular to the Internet." *Electric Power*, 2016 WL 4073318, at *5; *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256-57 (Fed. Cir. 2014). Rather, the claims address the problem of providing location information, which is an age-old problem as described above and decidedly ***not*** particular to the Internet.

The asserted claims are further distinguishable from the claims in *BASCOM* that the Federal Circuit found to "recite a specific, discrete implementation of the abstract idea of filtering content" different than the prior art so as to constitute an inventive concept. *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). As discussed above, the claims here merely teach the implementation of abstract ideas using generic computer components without the type of structural innovation found in the *BASCOM* claims. Thus, the claims here have exactly the type of preemptive effect of which *BASCOM* warns.

Finally, *Amdocs* is further distinguishable from the present case.  In *Amdocs*, the Federal Circuit held that the claims at issue contained sufficient "inventive concepts" where the claim terms were construed to implicate an inventive "distributed architecture." *Id.* at 1299–306. The court explained that the claimed "unconventional technological solution (enhancing data in a distributed fashion)" required "arguably generic components" but that they "operate[d] in an unconventional manner to achieve an improvement in computer functionality." *Id.* at 1300

(emphasis added). The claims at issue in this case also utilize generic components, such as input and output devices, processors, and storage, but in contrast to the *Amdocs* claims, the generic components here operate in expected and conventional manners.

Thus, an analysis of recent the Federal Circuit's recent case law confirms the patent-ineligibility of the asserted claims.

## VIII.   Conclusion

For the foregoing reasons, and pursuant to Rule 12(b)(6), Defendants respectfully request that the Court grant this motion to dismiss, finding that the claims of the '834, '023, and '220 Patents are invalid under 35 U.S.C. § 101 and enter judgment in favor of Defendants.

Dated:  December 29, 2016                      Respectfully submitted,

                                               FISH & RICHARDSON P.C.

                                               By:   */s/ David B. Conrad*
                                                     Neil J. McNabnay
                                                     mcnabnay@fr.com
                                                     Texas Bar No. 24002583
                                                     David B. Conrad
                                                     conrad@fr.com
                                                     Texas Bar No. 24049042
                                                     Ricardo J. Bonilla
                                                     rbonilla@fr.com
                                                     Texas Bar No. 24082704
                                                     1717 Main Street, Suite 5000
                                                     Dallas, TX  75201
                                                     (214) 747-5070 – Telephone
                                                     (214) 747-2091 – Facsimile

                                               **COUNSEL FOR DEFENDANTS DUNKIN' BRANDS,
                                               INC., DUNKIN' DONUTS LLC, DUNKIN'
                                               DONUTS FRANCHISING LLC, DD IP HOLDER
                                               LLC, BASKIN-ROBBINS LLC, BASKIN-
                                               ROBBINS FRANCHISING LLC, AND BR IP
                                               HOLDER LLC**


## CERTIFICATE OF COMPLIANCE WITH THE COURT'S
## 35 U.S.C. § 101 MOTION PRACTICE ORDER


_____   The parties **agree** that prior claim construction is not needed to inform the
          Court's analysis as to patentability.

\__X__   The parties **disagree** on whether prior claim construction is not needed to inform
          the Court's analysis as to patentability. The parties also conferred regarding this
          requirement in connection with another pending motion (No. 2:16-cv-00194-JRG,
          Dkt. No. 51), and the parties' positions have not changed.

                                               */s/ David B. Conrad*
                                               David B. Conrad

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing

document has been served on December 29, 2016, to all counsel of record who are deemed to have

consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ David B. Conrad*
David B. Conrad